# Exhibit A
## State Circuit Court Documents

 **CT Corporation**

**Service of Process Transmittal**
05/03/2017
CT Log Number 531159586

TO: Daniela Bukowski-James
The Hartford
1 Hartford Plz # HO-1-09
Hartford, CT 06155-0001

RE: **Process Served in Tennessee**

FOR: Hartford Life and Accident Insurance Company  (Domestic State: CT)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | CITY OF MEMPHIS a/s/o LAVERIA D. EDDINS, as surviving spouse of RODNEY EDDINS, Deceased, Pltf. vs. HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY, etc., Dft. |
| **DOCUMENT(S) SERVED:** | Summons, Return, Attachment(s), Complaint |
| **COURT/AGENCY:** | Shelby County Circuit Court, TN<br>Case # CT00161517 |
| **NATURE OF ACTION:** | Insurance Litigation |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Knoxville, TN |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 05/03/2017 postmarked on 05/01/2017 |
| **JURISDICTION SERVED :** | Tennessee |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after this summons has been served upon you, not including the day of service |
| **ATTORNEY(S) / SENDER(S):** | Sean Antone Hunt<br>PO Box 171-119<br>Memphis, TN 38187-1119<br>901-730-0937 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 05/03/2017, Expected Purge Date: 05/08/2017<br><br>Image SOP<br><br>Email Notification,  CTSOP Lawsuits (Not Specified)<br> SOPLawsuits.Law@thehartford.com |
| **SIGNED:**<br>**ADDRESS:**<br><br><br>**TELEPHONE:** | C T Corporation System<br>800 S. Gay Street<br>Suite 2021<br>Knoxville, TN 37929-9710<br>216-802-2121 |

Page 1 of  1 / NK

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

2

CERTIFIED MAIL

DEPARTMENT O
ST
500 JA
NASHVILLE, TENNESSEE 37243

7016 0750 0000 2775 1402

U.S. POSTAGE   PITNEYBOWES

ZIP 37243
02 4W
0000345898 MAY 01 2017

FIRST CLASS

7016 0750 0000 2775 1402        04/20/2017
HARTFORD LIFE & ACCIDENT INS CO
800 S. GAY STREET, STE 2021  C/O CT CORPO
KNOXVILLE, TN  37929

**STATE OF TENNESSEE**
**Department of Commerce and Insurance**
**500 James Robertson Parkway**
**Nashville, TN 37243-1131**
**PH - 615.532.5260, FX - 615.532.2788**
**Jerald.E.Gilbert@tn.gov**

April 20, 2017

Hartford Life & Accident Ins Co                          Certified Mail
800 S. Gay Street, Ste 2021  C/O Ct Corpor               Return Receipt Requested
Knoxville, TN  37929                                     7016 0750 0000 2775 1402
NAIC # 70815                                             Cashier # 31747

Re:    City Of Memphis, Et Al  V.  Hartford Life & Accident Ins Co

       Docket # CT-001615-17

To Whom It May Concern:

Pursuant to Tennessee Code Annotated § 56-2-504 or § 56-2-506, the Department of
Commerce and Insurance was served April 19, 2017, on your behalf in connection with the
above-styled proceeding.  Documentation relating to the subject is herein enclosed.

Jerald E. Gilbert
Designated Agent
Service of Process

Enclosures

cc: Circuit Court Clerk
    Shelby County
    140 Adams Street, Rm 324
    Memphis, Tn  38103

**(CIRCUIT/CHANCERY) COURT OF TENNESSEE**
**140 ADAMS AVENUE, MEMPHIS, TENNESSEE 38103**
**FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS**

ELECTRONICALLY FILED
2017 Apr 11 PM 9:55
CLERK OF COURT - CIRCUIT

## SUMMONS IN CIVIL ACTION

Docket No. _____

- ◯ Lawsuit
- ◯ Divorce

Ad Damnum $ 350,000+

| | | |
|---|---|---|
| CITY OF MEMPHIS a/s/o LAVERIA D. EDDINS, as surviving spouse of RODNEY EDDINS, Deceased | **VS** | HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY a/k/a THE HARTFORD |
| Plaintiff(s) | | Defendant(s) |

TO: (Name and Address of Defendant (One defendant per summons))

HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY a/k/a
THE HARTFORD
PO BOX 14299
LEXINGTON, KY 40512

Method of Service:
- ◯ Certified Mail
- ◯ Shelby County Sheriff
- ◯ Commissioner of Insurance ($)
- ◯ Secretary of State ($)
- ◯ Other TN County Sheriff ($)
- ◯ Private Process Server
- ◯ Other
($) Attach Required Fees

You are hereby summoned and required to defend a civil action by filing your answer with the Clerk of the Court and

serving a copy of your answer to the Complaint on **Sean Antone Hunt**                    **Plaintiff's**

attorney, whose address is  **PO Box 171-119, Memphis, TN 38187-1119**

telephone **901-730-0937**          within THIRTY (30) DAYS after this summons has been served upon you, not including the day of service. If you fail to do so, a judgment by default may be taken against you for the relief demanded in the Complaint.

JIMMY MOORE, Clerk / DONNA RUSSELL, Clerk and Master

TESTED AND ISSUED _____     By _____, D.C.

### TO THE DEFENDANT:

NOTICE; Pursuant to Chapter 919 of the Public Acts of 1980, you are hereby given the following notice:
Tennessee law provides a ten thousand dollar ($10,000) personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the Clerk of the Court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed. These include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible and school books. Should any of these items be seized, you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

FOR AMERICANS WITH DISABILITIES ACT (ADA) ASSISTANCE <u>ONLY</u>, CALL (901) 222-2341

I, JIMMY MOORE / DONNA RUSSELL , Clerk of the Court, Shelby County, Tennessee, certify this to be a true and accurate copy as filed this

_____ 20__

JIMMY MOORE , Clerk / DONNA RUSSELL, Clerk and Master    By: _____, D.C.

### RETURN OF SERVICE OF SUMMONS

I HEREBY CERTIFY THAT I **HAVE** SERVED THE WITHIN SUMMONS:

By delivering on the _____ day of _____, 20_____ at _____M. a copy of the summons

and a copy of the Complaint to the following Defendant _____

at _____

By: _____

Signature of person accepting service                    Sheriff or other authorized person to serve process

### RETURN OF NON-SERVICE OF SUMMONS

I HEREBY CERTIFY THAT I **HAVE NOT** SERVED THE WITHIN SUMMONS:

To the named Defendant _____

because _____is (are) not to be found in this County after diligent search and inquiry for the following

reason(s): _____

This _____ day of _____, 20_____.

By: _____

Sheriff or other authorized person to serve process

6



**The Shelby County, Tennessee Circuit Court**

**Case Style:**        CITY OF MEMPHIS VS HARTFORD LIFE AND ACCIDENT INS

**Case Number:**     CT-001615-17

**Type:**              SUMMONS ISSD TO MISC

Sharon Smith, DC

Electronically signed on 04/12/2017 08:30:36 AM

ELECTRONICALLY FILED
2017 Apr 11 PM 9:55
CLERK OF COURT - CIRCUIT

## IN THE CIRCUIT COURT OF TENNESSEE FOR THE
## THIRTIETH JUDICIAL DISTRICT AT MEMPHIS, SHELBY COUNTY

**CITY OF MEMPHIS a/s/o LAVERIA D. EDDINS, as surviving spouse of RODNEY EDDINS, Deceased,**

      **Plaintiff,**

**v.**

**HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY a/k/a THE HARTFORD,**

      **Defendant.**

No. **CT-001615-17**

## COMPLAINT FOR DENIAL OF INSURANCE CLAIM

COMES NOW, CITY OF MEMPHIS as subrogee and legal assignee of the rights of LAVERIA D. EDDINS, as surviving spouse of RODNEY EDDINS, deceased, Plaintiff, by and through its attorney, and brings this complaint against HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY a/k/a THE HARTFORD and for its cause of action would show unto the Court:

1.     Plaintiff, CITY OF MEMPHIS is subrogee and legal assignee of the rights of LAVERIA D. EDDINS, as surviving spouse of RODNEY EDDINS, deceased, who is and for all relevant times an adult residing in this Court's jurisdiction at 3645 Hermitage Dr., Memphis, TN 38116. Plaintiff, CITY OF MEMPHIS, is the policyholder of the policy at issue in this action. A copy of the legal assignment of the rights of LAVERIA D. EDDINS, as surviving spouse of RODNEY EDDINS, deceased, is attached hereto as Exhibit A.

1

2.      Defendant is a corporation licensed to do business in the State of Tennessee and may be served through the Tennessee Commissioner of Commerce and Insurance.

3.      This Court has jurisdiction over the defendant as an insurance company doing business in Tennessee and who wrote the subject policy in the State of Tennessee.

4.      At all times, Defendant was a corporation licensed in the State of Tennessee to provide insurance including, but not limited to, Accidental Death Benefits coverage.

5.      On and before April 16, 2016, Mr. Eddins was insured with Defendant under Policy No. ETB-153010 as an "ELIGIBLE PERSON[]" under the designation "Class 1" with a description of "All Full-Time and Part-Time Employees of the Policyholder, including elected and appointed officials, Police Force, Harbor Patrol, and Firefighters of the policyholder, who have a spouse and/or minor child(ren)." A copy of said policy is attached hereto as Exhibit B.

6.      Mr. Eddins worked for the City of Memphis as a firefighter with the Memphis Fire Department, when he collapsed and died on or about April 16, 2016, just before midnight, while at the scene of a house fire.

7.      After all lifesaving efforts were exhausted, Mr. Eddins was pronounced dead at or around 1:40 a.m. on April 17, 2016 by Dr. Basinegel.

8.      Plaintiff timely filed a claim for Accidental Death Benefits with Defendant.

9.      Plaintiff's claim was assigned claim number 5022496 by Defendant.

10.     Plaintiff cooperated with the Defendant in the claim process to the extent of providing records and other information in order for Defendant to properly evaluate the claim for Accidental Death Benefits.

11.     On or about September 23, 2016, Defendant sent a denial of claim letter to Plaintiff. See the attached Exhibit C.

2

12.     Defendant's denial letter stated that "the information reviewed establishes that Mr. Eddins' death did not result from accidental injury independent of all other causes, which is a required condition for benefits to become payable under the Policy. As set forth above, the Policy defines Injury as bodily injury caused by an accident and the accident must result directly and independently of all other causes. Loss resulting from sickness or disease is not considered as resulting from injury. It has been established that Mr. Eddins' death was a result of cardiac arrhythmias and hypertensive cardiovascular disease. Because Mr. Eddins' death was due to sickness or disease, it is not considered a result of an injury and his death does not constitute a covered loss under the terms of the Policy."

13.     Defendant's conclusion is incorrect and based upon a faulty interpretation of the autopsy report made without consulting with an appropriate medical expert to confirm that conclesion.

14.     Instead, based upon the opinions of two separate doctors, who stated, to a reasonable degree of medical certainty, that the overhaul fire procedure that Mr. Eddins was performing on April 16, 2016 as a Firefighter Lieutenant caused his death, was due most likely to "demand cardiac ischemia" leading to "ventricular fibrillation," this claim constitutes a death by accident resulting from the exertion of the decedent coupled with his current physical condition to cause his death. These doctors' opinions establish that the cause of Mr. Eddins' death was ventricular fibrillation, and the overall fire procedure Mr. Eddins was performing on April 16, 2016 led to his ventricular fibrillation and sudden death and not from "sickness or disease." Thus, this claim is covered and properly payable under the subject policy.

15.     Defendant has failed and refused to pay this claim notwithstanding fact that the claim is properly payable under the policy.

3

16.    Defendant breached its contract of insurance with Plaintiff by failing to promptly adjust and properly pay the claim for Accidental Death Benefits under the policy.

17.    Appropriate and proper demand has been made upon the Defendant for payment of the Accidental Death Benefits under the policy yet the defendant has failed and refused to make payment as required by the policy and by the provisions of Tennessee Code Annotated §56-7-105. Therefore, Plaintiff seeks the penalties, interest, and attorney's fees provided by Tennessee Code Annotated §56-7-105.

18.    Because of the Defendant's breach of contract, Plaintiff has suffered damages and seeks said damages for the breach of contract by the Defendant in failing to pay the insurance benefits along with any and all consequential damages, prejudgment and post judgment interest, fees and expenses associated with bringing this action.

WHEREFORE, Plaintiff prays for this honorable Court:

1. To issue process upon the Defendant and require the Defendant to answer;

2. To enter judgment against the Defendant in the amount of the claim, plus any and a

all consequential damages, including pre- and post-judgment interest, attorney's fees, and discretionary costs, as applicable; and

3. To provide the plaintiff with such further relief as necessary and equitable as the Court deems appropriate.

Respectfully submitted,

**THE HUNT LAW FIRM**

**SEAN ANTONE HUNT**, BPR#16159
**SALWA ADNAN BAHHUR**, BPR#31955
Attorneys for the Plaintiff
P.O. Box 171119
Memphis, TN 38187-1119
901-730-0937 ofc
901-753-7542 fax

**WE ARE SURETY FOR THE COSTS.**

5

12

**ASSIGNMENT OF RIGHTS**

For value received, I, Leveria D. Eddins, hereby assign, set over and transfer to the City of Memphis, and to its successors or assigns all of my right, title, interest, claim or demand in the benefits that may be due under an Accidental Death policy written by The Hartford Life and Accident Insurance Co., policy number ETB-153010, including all moneys and benefits due or that may become due under the terms of said policy of insurance; giving and granting to the City of Memphis full power of attorney, right and authority in its own name, and in my place and stead, to assert any claim at law under the policy and accept the proceeds from the settlement of all claims assigned under said policy just as effectively to all intents and purposes as I might or could do myself if this assignment had not been made.

_Leveria D. Eddins_
LEVERIA D. EDDINS

Dated: **10 / 05 / 2016**

**EXHIBIT A**

13



**THE HARTFORD**

SCHEDULE
RIDER #1

<u>POLICY MODIFICATIONS</u>: This policy as issued is amended as follows:

In consideration of the policy premium, it is hereby understood and agreed that the section ELIGIBLE PERSONS is amended to read as follows:

| Class | Description |
|-------|-------------|
| 1 | All Full-Time and Part-Time Employees of the Policyholder, including elected and appointed officials, Police Force, Harbor Patrol, and Firefighters of the Policyholder. |

This page is a policy page issued and effective on the <u>Policy Effective Date</u> unless dates are shown below making this page a rider.

RIDER: This rider, issued <u>November 12, 2015</u>, forms a part of Policy No. <u>ETB-153010</u> issued to <u>City of Memphis</u>. It is effective <u>October 20, 2015</u>. It does not vary, waive, alter or extend any of the terms, conditions, or provisions of the policy, except as stated herein. Signed for the <u>Hartford Life and Accident Insurance Company</u>.



Terence Shields, *Secretary*          Michael Concannon, *Executive Vice President*

Form 7679 B10 Rev.-1

**IMPORTANT**
This Endorcement forms a part of your Policy and should be attached to the same. Please DO NOT FAIL to have this done.



**EXHIBIT B**

**HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY**
Hartford Plaza
Hartford, Connecticut
(A stock insurance company)

Will pay benefits according to the conditions of this policy.

**THE HARTFORD**

### REVISED

Policyholder Name:     City Of Memphis

Policyholder Address:     2714 Union Extd.
                         Suite 200
                         Memphis, TN 38112-4437

Policy Number:       ETB-153010*

Place of Delivery:     Memphis, TN

Policy Effective Date:   July 16, 2013

Policy Expiration Date:  July 16, 2016

**TABLE OF CONTENTS**
Schedule
Participating Firms (if any)
Contract Provisions
Definitions
Determination of Individual Coverage
Exclusions
Hazards
Benefits
Claims
Riders (if any)

*This policy replaces the prior policy bearing the above number as of the effective date of this policy.

Signed for the Company

Terence Shields, *Secretary*          Ronald R. Gendreau, *President*

Form 7679 A2

# EXHIBIT B

15

# SCHEDULE

**ELIGIBLE PERSONS**

**Class**

1

**Description**

All Full-Time and Part-Time Employees of the Policyholder, including elected and appointed officials, Police Force, Harbor Patrol, and Firefighters of the policyholder, who have a spouse and/or minor child(ren).

Form 7679 B6

**BENEFIT DESCRIPTION:**

AD means Accidental Death Benefit
Loss Period: 365 days (not applicable to residents of Pennsylvania)

**HAZARDS, BENEFITS, AND AMOUNTS**

| Class | Hazard | Benefit | Amount |
|-------|--------|---------|--------|
| 1 | C-12, C-19, C-72 | AD | 5 times salary*, rounded to the next highest $1,000, subject to a Minimum of $100,000 and a Maximum of $350,000 |

*"salary" means the Insured Person's base annual salary on the date of the accident, excluding overtime pay, bonuses, commissions, and any other types of incentives.

Form 7679 B7

**POLICY PREMIUMS:**

| | |
|---|---|
| Premium Not Subject To Audit: | $461,193 |
| Premium Subject To Audit: | $        0 |
| Total Premium For Policy Period: | $461,193 |

Total Premium Payable in Installments:
$153,731 payable on the Effective Date and the 16th day of each 12th month thereafter, excluding the Expiration Date.

Form 7679 B8

# EXHIBIT B

## CONTRACT PROVISIONS

**Entire Contract:** The entire contract between the Policyholder and us consists of this policy, any individual applications, and any papers made a part of this policy at issue.

**Changes:** No agent has authority to change or waive any part of this policy. To be valid, any change or waiver must be in writing, approved by one of our officers and made a part of this policy.

**Interpretation of Policy Terms and Conditions:** We have full discretion and authority to determine eligibility for the benefits and to construe and interpret all terms and provisions of this policy.

**Time Periods:** All periods begin and end at 12:01 A.M., Standard Time at the place where this policy is delivered.

**Certificates:** We will give certificates to:
  a)  the Policyholder; or
  b)  any other person according to a mutual agreement among the other person, the Policyholder and us;
for delivery to Insured Persons.

The certificates will state the features of this policy which are important to Insured Persons.

**Conformity with State Statutes:** On the Policy Effective Date, any part of the policy which is in conflict with a statute of the state in which the policy is:
  a)  delivered; or
  b)  issued for delivery;
is hereby amended to agree with the statute's minimum requirements.

**Data Furnished by Policyholder:** The Policyholder will, upon our request, give us:
  a)  the names of all persons initially eligible;
  b)  the names of all additional persons who become eligible;
  c)  the names of all persons whose amount of Principal Sum is to be changed;
  d)  the names of all persons whose insurance is canceled; and
  e)  any data necessary to calculate premiums.

The Policyholder's failure to report a person's termination of insurance does not continue the coverage beyond the date of termination.

The Policyholder, with our approval, may keep the important insurance records on all Insured Persons. The Policyholder must give us information, when and in the manner we ask, to administer the insurance provided by this policy.

The Policyholder's insurance records will be open for our inspection at any reasonable time.

Form 7679 D4

# EXHIBIT B

## CONTRACT PROVISIONS (Continued)

<u>Cancellation</u>:  This policy may be cancelled at any time by written notice mailed or delivered by us to the Policyholder or by the Policyholder to us.  If we cancel, we will mail or deliver the notice to the Policyholder at its last address shown in our records.

If we cancel, it becomes effective on the later of:
    a)   the date stated in the notice; or
    b)   the 31st day after we mail or deliver the notice.

If the Policyholder cancels, it becomes effective on the later of:
    a)   the date we receive the notice; or
    b)   the date stated in the notice.

In either event:
    a)   we will promptly return any unearned premium paid; or
    b)   the Policyholder will promptly pay any earned premium which has not been paid.

Any earned or unearned premium will be determined on a pro rata basis.

Cancellation will not affect any claim for loss due to an accident which occurs before the effective date of the cancellation.

<u>Not in Lieu of Workers' Compensation</u>:  This policy does not satisfy any requirement for workers' compensation insurance.

Form 7679 D4 (CONT.)

# EXHIBIT B

## CONTRACT PROVISIONS (Continued)

Policy Period:  This Policy becomes effective on the Policy Effective Date and continues in force to the end of the period for which premium was paid unless cancelled at an earlier date.  This Policy terminates on the earlier of:
   a)   the Policy Expiration Date unless continued in force in accordance with the Renewal Provision; or
   b)   the last day of the period for which premium has been paid subject to the Grace Period.

The Policy Effective Date and Policy Expiration Date are shown:
   a)   on page 1 for the original Policy Period; and
   b)   in a Renewal Rider for any Renewal Policy Period.

Renewal:  We will send the Policyholder a notice of policy renewal.  The Policy will be renewed if the Policyholder signs and returns the notice prior to the current Expiration Date.  If the Policyholder does not receive the notice, the policy may be renewed if we receive a written request from the Policyholder and a deposit renewal premium of $350 on or before the current Expiration Date.  Once we have received the deposit renewal premium, we will request information from the Policyholder necessary to calculate the actual renewal premium and either return any excess premium or bill the Policyholder for the remaining unpaid renewal premium.

However, in no event will this policy be renewed if:
   a)   we have refused to renew this policy on or before the current Expiration Date;
   b)   this policy has been cancelled on or before the current Expiration Date; and
   c)   the Policyholder does not give us, in advance of the current Expiration Date, the information we request.

Premium Due Dates:  Each Premium is due in advance of the date the Schedule states that it is payable.  If the Schedule shows an amount for Premium Subject To Audit, the earned premium will be calculated for each date on which the Policyholder is required to furnish data for determining Units of Exposure.  If the earned Premium:
   a)   is greater than the premium paid, the additional premium is payable on the date we notify the Policyholder of the amount;
   b)   is less than the premium paid, we will promptly return the unearned portion of the premium paid.

Grace Period:  A Grace Period of 31 days is allowed for payment of each premium due after the initial premium, unless this policy is cancelled on or before the due date.  If the Policyholder has returned the notice of renewal prior to the Policy Expiration Date, a Grace Period of 31 days from the Policy Expiration Date is allowed for payment of the renewal premium.  This policy will continue in force during the Grace Period.  The Policyholder is liable to us for the payment of Premium accruing for the period this policy continues in force.

Payment:  Premiums are to be paid to us by the Policyholder.  However, they may be paid to us by any other person according to a mutual agreement among the other person, the Policyholder and us.

Change of Premiums:  We have the right to change the rate at which Premiums will be calculated for each Policy Period.

Form 7679 D2 (Rev.-1)

# EXHIBIT B

## DEFINITIONS

Each term listed, when used in this policy, has the following meaning:

We, us, or our means the insurance company named on page 1.

You, Your, or Insured Person means an Eligible Person while he or she is covered under this policy.

Injury means, and an Insured Person is covered for, bodily injury resulting directly and independently of all other causes from accident which occurs:
   a)   while he or she is covered under; and
   b)   in the manner specified in;
a Hazard applicable to his or her class.

Loss resulting from:
   a)   sickness or disease, except a pus-forming infection which occurs through an accidental wound; or
   b)   medical or surgical treatment of a sickness or disease.
is not considered as resulting from injury.

Business Trip means a bona fide trip:
   a)   while on assignment or at the direction of the Policyholder for the purpose of furthering the business of the Policyholder;
   b)   which begins when a person leaves his or her residence or place of regular employment, whichever last occurs, for the purpose of beginning the trip;
   c)   which ends when he or she returns to his or her residence or place of regular employment, whichever first occurs; and
   d)   excluding travel to and from work, bona fide leaves of absence and vacations.

Business Trip means a bona fide trip:
a)   while on business while on assignment or at the direction of the Policyholder whether on or off the premises of the Policyholder for the purpose of furthering the business of the Policyholder;
b)   while responding to or returning from any emergency;
c)   while operating or riding in a police department vehicle;
d)   while performing duties at the scene of a fire or any emergency; or
d)   performing the duties of a police officer.

A Business Trip includes any travel on behalf of the Policyholder, whether by land vehicle or by air, whether in town, out of town, or out of the country, whether part of the day or all day

Trip means a trip which:
   a)   begins when a person leaves his or her residence or place of regular employment, whichever last occurs, for the purpose of beginning the trip; and
   b)   ends when he or she returns to his or her residence or place of regular employment, whichever first occurs.

Passenger means a person who is not:
   a)   the operator or driver; or
   b)   the pilot, student pilot, or a crewmember;
of a conveyance at the time of accident.

Common Carrier means a conveyance operated by a concern, other than the Policyholder, organized and licensed for the transportation of passengers for hire and operated by an employee of that concern.

Form 7679 E1

# EXHIBIT B

<u>DEFINITIONS</u>

<u>Civil Aircraft</u> means a civil or public aircraft which:
   a)  has an Airworthiness Certificate;
   b)  is piloted by a person who has:
      1)  a current pilot certificate with the appropriate aircraft category rating for that aircraft; and
      2)  a current medical certificate which is appropriate for the operation of that aircraft; and
   c)  is not operated by the militia, or armed forces of any state, national government or international authority.

<u>Scheduled Aircraft</u> means a Civil Aircraft operated by a scheduled airline which:
   a)  is licensed by the FAA for the transportation of passengers for hire; and
   b)  publishes its flight schedules and fares for regular passenger service.

<u>Military Transport Aircraft</u> means a transport aircraft operated by:
   a)  the United States Air Mobility Command (AMC); or
   b)  a national military air transport service of any country.

<u>Policyholder Aircraft</u> means an aircraft which is owned, leased, or operated by or on behalf of the Policyholder.

<u>Airworthiness Certificate</u> means a valid and current "Standard Airworthiness Certificate" issued by the FAA.

<u>FAA</u> means:
   a)  the Federal Aviation Administration of the United States; or
   b)  the similar aviation authority for the country of the aircraft's registry, if the country is recognized by the United States.

<u>Extra-Hazardous Aviation Activity</u> means an aircraft while it is being used for one or more of the following activities:

| | |
|---|---|
| Acrobatics or Stunt Flying | Aerial Photography or Banner Towing |
| Racing or any Endurance Test | Any Test or Experiment |
| Crop Dusting or Seeding | Firefighting |
| Spraying | Any flight which requires: |
| Exploration | a)  a special permit; or |
| Pipe or Power Line Inspection | b)  waiver; |
| Any Form of Hunting | from the FAA, even though granted. |
| Bird or Fowl Herding | |

Form 7679 E2

**EXHIBIT B**

21

## DETERMINATION OF INDIVIDUAL COVERAGE

**Effective Date**: Each Eligible Person becomes an Insured Person on the later of:
    a)  the Policy Effective Date; or
    b)  the date he or she enters a Class of Eligible Persons.

**Termination**:  Coverage of each Insured Person terminates on the earlier of:
    a)  the date this policy terminates; or
    b)  the date he or she does not qualify in any Class of Eligible Person.

Termination will not affect any claim for loss due to an accident which occurs before the effective date of the termination.

The Policyholder's failure to report that a person ceased to qualify in a Class of Eligible Persons will not continue coverage in that Class beyond the date he or she ceased to qualify.

**Hazards and Benefits Determined By Class**: Each Insured Person is covered under the Hazard and for the Benefits applicable to the Class in which he or she qualifies:
    a)  beginning on the date he or she enters the Class; and
    b)  ending on the date he or she leaves the Class.

If an Insured Person qualifies in more than one Class on the date of accident, he or she will be considered to qualify in the one Class with the largest Benefit Amount.

Form 7679 F1

## EXCLUSIONS AND AGGREGATE LIMITATION

**Exclusions:**  This policy does not cover any loss resulting from:

1) intentionally self-inflicted injury, suicide or attempted suicide whether sane or insane, (in Missouri, while sane);
2) war or act of war, whether declared or undeclared;
3) injury sustained while in the armed forces of any country or international authority;
4) injury sustained while on any aircraft, unless, and only to the extent, a Hazard specifically describes such coverage;
5) injury sustained while voluntarily taking drugs which federal law prohibits dispensing without a prescription, including sedatives, narcotics, barbiturates, amphetamines, or hallucinogens, unless the drug is taken as prescribed or administered by a licensed physician;
6) injury sustained while committing or attempting to commit a felony;
7) injury sustained while legally intoxicated from the use of alcohol (not applicable to residents of Minnesota).

**Aggregate Limitation:**  If:

    a)  two or more persons, in the same or different classes, are injured as the result of any one accident which occurs in the manner specified in the Hazard(s) identified in the Schedule; and
    b)  the total of all amounts payable for all persons, in the absence of this provision, exceeds the Aggregate Amount shown opposite the Hazard;

the amount for each person will be proportionately reduced so that the total will equal the Aggregate Amount.

Form 7679 G6

# EXHIBIT B

<u>HAZARD C-12</u>
<u>24-Hour Coverage</u>
Business Trip

<u>Coverage</u>:  This Hazard covers injury resulting from an accident which occurs anywhere in the world during a Business Trip, including:
a) an injury resulting from an accident which occurs while the Insured Person is a passenger on, boarding or alighting from a Civil Aircraft or Military Transport Aircraft; or
b) injury resulting from being struck by an aircraft.

<u>Exclusions</u>:  This Hazard does not cover injury resulting from an accident which occurs while the Insured Person is on, boarding, or alighting from:
a) an aircraft engaged in an Extra-Hazardous Aviation Activity; or
b) a Policyholder Aircraft.

Refer to the Policy Modifications, Definitions and Exclusions sections for modifications, limitations and exclusions affecting this coverage.

Form 7679 H-12 (Rev.-1)

<u>HAZARD C-19</u>
<u>Specified Aircraft Coverage</u>
Trip

<u>Coverage</u>:  This Hazard covers injury resulting from accident which occurs anywhere in the world while the Insured Person is on a Trip as a passenger, pilot, operator, or member of the crew on, boarding or alighting from, or being struck by a 1988 Bell 206B3 FAA Number N164K, 1989 Bell 206B3 FAA Number N41EW, 1999 Bell 206B3 FAA Number N6401X, or a 2004 Eurocopter AS350 B3 FAA Number N350MP which is  by the Policyholder and which aircraft is being operated at the time with the consent of the Policyholder and piloted by Phillip A. Leblanc, Charles E Vrska, Charles D. Smith, Donald M. Hoffman, Kevin W. Archey, Craig C. Cook, Robert Hardy II, Hatton N. Batson,  Jeremy R. Russell, Leonard G. Curry, William D. Phillips, Stephen A. Friedlander or Ricky J. Swatley, holding a current and valid certificate of competency of a rating authorizing him or her to pilot this aircraft and who has logged a minimum of 1000 hours as a pilot, at least 500 hours of which were logged in a single or multi-engine aircraft of like and basic design.

<u>Exclusions</u>:  This Hazard does not cover injury resulting from accident which occurs while the above aircraft is:
a) carrying passengers for hire; or
b) engaged in an Extra Hazardous Aviation Activity.

Refer to the Policy Modifications, Definitions, and Exclusions section for modifications, limitations, and exclusions affecting this coverage.

Form 7679 H-19

# EXHIBIT B

23

**HAZARD C-72**
**Medical Expense Benefit**

**Coverage:** This Hazard covers a Loss of Life Benefit if the Insured Person contracts a Specified Medical Condition and the Loss occurs within 26 weeks from participating in an Emergency Activity. Payment will be made if the following conditions are met:

1) the first symptoms of the Specified Medical Condition must be diagnosed by a Physician:
   a. with respect to an Infectious Disease, within 30 days of participation in an Emergency Activity; or
   b. with respect to all other Specified Medical Conditions, within 7 days of participation in an Emergency Activity.
2) the Emergency Activity must occur during the policy period.

**Specified Medical Condition** means influenza and Pneumonia, and includes Infectious Disease.

**Emergency Activity** means rescue or emergency activities such as, but not limited to, fire fighting and fire drills, any training exercise which stimulates an emergency and where active participation is required, criminal apprehension, protecting the public, oneself or property from imminent peril, and responding to any emergency calls or alarms. Emergency Activity does not include:

1) non-emergency types of activities such as, but not limited to, patrolling, traffic control, inspection, maintenance, office work, classroom training or fundraising; or
2) recreational activities such as, but not limited to, social activities or entertainment.

**Infectious Disease** means a disease caused by the invasion of the body by pathogenic microorganisms.

# EXHIBIT B

24

**ACCIDENTAL DEATH BENEFIT**

If an Insured Person's injury results in loss of life within the Loss Period after the date of the accident, we will pay the Principal Sum.

The Principal Sum and the Loss Period are shown in the Schedule.

**DISAPPEARANCE**

An Insured Person will be presumed to have suffered loss of life if:
   a)   his or her body has not been found within one year after the disappearance of a conveyance in which he or she was an occupant at the time of its disappearance;
   b)   the disappearance of the conveyance was due to its accidental forced landing, stranding, sinking or wrecking; and
   c)   this policy would have covered injury resulting from the accident.

Form 7679 L1

# EXHIBIT B

## CLAIMS

**Notice of Claim:** The person who has the right to claim benefits (the claimant or beneficiary, or his or her representative) must give us written notice of a claim within 30 days after a covered loss begins.  If notice cannot be given within that time, it must be given as soon as reasonably possible.

The notice should include the Insured Person's name and the policy number.  Send it to our office in Hartford, Connecticut, or give it to our agent.

**Claim Forms:** When we receive the notice of claim, we will send forms to the claimant for giving us proof of loss.  The forms will be sent within 15 days after we receive the notice of claim.

If the forms are not received, the claimant will satisfy the proof of loss requirement if a written notice of the occurrence, character and nature of the loss is sent to us.

**Proof of Loss:** Proof of loss must be sent to us in writing within 90 days after:
    a)  the end of a period of our liability for periodic payment claims; or
    b)  the date of the loss for all other claims.

If the claimant is not able to send it within that time, it may be sent as soon as reasonably possible without affecting the claim.  The additional time allowed cannot exceed one year from the date proof of loss is due, unless the claimant is legally incapacitated.

**Time of Claim Payment:** We will pay any daily, weekly or monthly benefit due:
    a)  on a monthly basis, after we receive the proof of loss, while the loss and our liability continue; or
    b)  immediately after we receive the proof of loss following the end of our liability.

We will pay any other benefit due immediately, but not more than 60 days, after we receive the proof of loss.

**Payment of Claims:** We will pay any benefit due for loss of the Insured Person's life:
    a)  according to the beneficiary designation in effect at the time of  his or her death; otherwise
    b)  if no beneficiary is designated, according to the beneficiary designation under the Group Life Insurance Policy issued to the Policyholder and in effect at the time of the Insured Person's death; or
    c)  to the survivors, in equal shares, in the first of the following classes to have a survivor at the Insured Person's death:
        1)  spouse,
        2)  children,
        3)  parents,
        4)  brothers and sisters.
If there is no survivor in these classes, payment will be made to the Insured Person's estate.

All other benefits due and not assigned will be paid to the Insured Person, if living.  Otherwise, the benefits will be paid according to the preceding paragraph.

Form 7679 Z2b

# EXHIBIT B

If a benefit due is payable to:
a)   the Insured Person's estate; or
b)   the Insured Person or a beneficiary who is either a minor or not competent to give a valid release for the payment; we may pay up to $1,000 ($3,000 for residents of Florida) of the benefit due to some other person.

The other person will be someone related to the Insured Person or the beneficiary by blood or marriage who we believe is entitled to the payment.  We will be relieved of further responsibility to the extent of any payment made in good faith.

<u>Appealing Denial of Claims</u>:  If a claim for benefits is wholly or partially denied, notice of the decision shall be furnished to the Insured Person.  This written decision will:
a)   give the specific reason or reasons for denial;
b)   make specific reference to policy provisions on which the denial is based;
c)   provide a description of any additional information necessary to prepare the claim and an explanation of why it is necessary; and
d)   provide an explanation of the review procedure.

On any denied claim, an Insured Person or his representative may appeal to Us for a full and fair review.  The claimant may:
a)   request a review upon written application within 60 days of receipt of claim denial;
b)   review pertinent documents; and
c)   submit issues and comments in writing.

We will make a decision no more than 60 days after receipt of the request for review, except in special circumstances (such as the need to hold a hearing), but in no case more than 120 days after we receive the request for review.  The written decision will include specific reasons for the decision on which the decision is based.

<u>Physical Examinations and Autopsy</u>:  While a claim is pending we have the right at our expense:
a)   to have the Insured Person who has a loss examined by a physician when and as often as is reasonably necessary; and
b)   in case of death to make an autopsy, where it is not forbidden by law.

<u>Legal Actions</u>:  You cannot take legal action against us:
a)   before 60 days following the date proof of loss is sent to us;
b)   after 3 years (6 years for residents of South Carolina) following the date proof of loss is due (for Florida residents, after the expiration of the applicable statute of limitations following the date proof of loss is due).

<u>Naming a Beneficiary</u>:  The Insured Person may name a beneficiary or change a revocably named beneficiary by giving your written request to the Policyholder.  His or her request takes effect on the date you execute it, regardless of whether he or she is living when the Policyholder receives it. We will be relieved of further responsibility to the extent of any payment we made in good faith before the Policyholder received his or her request.

<u>Assignment</u>:  We will recognize any assignment the Insured Person makes under this policy, provided:
a)   it is duly executed; and
b)   a copy is on file with us.

We and the Policyholder assume no responsibility for the validity or effect of an assignment.

Form 7679 Z3a


# EXHIBIT B

**NOTICE CONCERNING COVERAGE UNDER**

**THE TENNESSEE LIFE AND HEALTH INSURANCE GUARANTY ASSOCIATION ACT**

Residents of Tennessee who purchase life insurance, annuities or health insurance should know that the insurance companies licensed in this state to write these types of insurance are members of the Tennessee Life and Health Insurance Guaranty Association. The purpose of this association is to assure that policyholders will be protected, within limits, in the unlikely event that a member insurer becomes financially unable to meet its obligations. If this should happen, the Guaranty Association will assess its other member insurance companies for the money to pay the claims of insured persons who live in this state and, in some cases, to keep coverage in force. The valuable extra protection provided by these insurers through the Guaranty Association is not unlimited, however. And, as noted in the box below, this protection is not a substitute for consumers' care in selecting companies that are well-managed and financially stable.

The state law that provides for this safety-net coverage is called the Tennessee Life and Health Insurance Guaranty Association Act. On the next page is a brief summary of this law's coverages, exclusions and limits. This summary does not cover all provisions of the law or describe all of the conditions and limitations relating to coverage. **This summary does not in any way change anyone's rights or obligations under the act or the rights or obligations of the Guaranty Association.**

<u>COVERAGE</u>

Generally, individuals will be protected by the Life and Health Insurance Guaranty Association if they live in this state and hold a life or health insurance contract, an annuity, or if they are insured under a group insurance contract issued by an insurer authorized to conduct business in Tennessee. Health insurance includes disability and long term care policies. The beneficiaries, payees or assignees of insured persons are protected as well, even if they live in another state.

<u>EXCLUSIONS FROM COVERAGE</u>

However, persons holding such policies are not protected by this Guaranty Association if:

1) they are eligible for protection under the laws of another state (this may occur when the insolvent insurer was incorporated in another state whose guaranty association protects insureds who live outside that state);

2) the insurer was not authorized to do business in this state;

3) their policy was issued by an HMO, a fraternal benefit society, a mandatory state pooling plan, a mutual assessment company or similar plan which the policyholder is subject to future assessments, or by an insurance exchange.

The Guaranty Association also does not provide coverage for:

1) any policy or portion of a policy which is not guaranteed by the insurer or for which the individual has assumed the risk, such as a variable contract sold by prospectus;

2) any policy of reinsurance (unless an assumption certificate was issued);

3) interest rate yields that exceed an average rate;

4) dividends;

5) credits given in connection with the administration of a policy by a group contractholder;

6) employers' plans to the extent they are self-funded (that is, not insured by an insurance company, even if an insurance company administers them);

7) unallocated annuity contracts (which gives the right to group contractholders, not individuals),

**Form PA-8228-2     Tennessee**                                    Printed in U.S.A.

# EXHIBIT B

## LIMITS ON AMOUNT OF COVERAGE

The act also limits the amount the Guaranty Association is obligated to pay out.  The Guaranty Association cannot pay more than what the insurance company would owe under a policy or contract.  For any one insured life, the Guaranty Association guarantees payments up to a stated maximum no matter how many policies and contracts there were with the same company, even if they provided different types of coverages. These aggregate limits per life are as follows:

- $300,000 for policies and contracts of all types, except as described in the next point

- $500,000 for basic hospital, medical and surgical insurance and major medical insurance issued by companies that become insolvent after January 1, 2010

Within these overall limits, the Guaranty Association cannot guarantee payment of benefit greater than the following:

- life insurance death benefits - $300,000

- life insurance cash surrender value - $100,000

- present value of annuity benefits for companies insolvent before July 1, 2009 - $100,000

- present value of annuity benefits for companies insolvent after June 30, 2009 - $250,000

- health insurance benefits for companies declared insolvent before January 1, 2010 - $100,000

- health insurance benefits for companies declared insolvent on or after January 1, 2010:

    o $100,000 for limited benefits and supplemental health coverages

    o $300,000 for disability and long term care insurance

    o $500,000 for basic hospital, medical and surgical insurance or major medical insurance

**Form PA-8228-2    Tennessee**

Printed in U.S.A.

# EXHIBIT B

••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

The Tennessee Life and Health Insurance Guaranty Association may not provide coverage for this policy.   If coverage is provided, it may be subject to substantial limitations or exclusions, and require continued residency in Tennessee.  You should not rely on coverage by the Tennessee Life and Health Insurance Guaranty Association in selecting an insurance company or in selecting an insurance policy.

Coverage is NOT provided for your policy or any portion of it that is not guaranteed by the insurer for which you have assumed the risk, such as a variable contract sold by prospectus.

Insurance companies or their agents are required by law to give or send you this notice.  However, insurance companies and their agents are prohibited by law from using the existence of the Guaranty Association to induce you to purchase any kind of insurance policy.

Tennessee Life and Health Guaranty Association<br>
1200 One Nashville Place<br>
150 4th Avenue North<br>
Nashville, Tennessee 37219

Tennessee Department of Commerce and Insurance<br>
500 James Robertson Parkway<br>
Nashville, Tennessee 37243

••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

**Form PA-8228-2     Tennessee**

Printed in U.S.A.

# EXHIBIT B



**THE HARTFORD**

September 23, 2016

Leveria D. Eddins
3645 Hermitage Dr
Memphis, TN 38116

Policyholder:   City of Memphis
Policy No.:     ETB-153010
Insured:        Rodney Eddins
Claim No:       5022496

Dear Ms. Eddins:

We are writing you regarding your claim for Accidental Death Benefits under the above captioned Hartford Life and Accident Insurance policy.

We have completed our review of your claim for benefits and have determined that the evidence submitted in support of your claim establishes that Mr. Eddins' death is not covered under the Policy. More specifically, Mr. Eddins' did not suffer an Injury as defined by the Policy. Accordingly, Accidental Death benefits are not payable. Please allow us to explain.

This Policy is an Accidental Death and Dismemberment Policy, which states if an Insured Person's injury results in loss of life within the Loss Period after the date of accident, we will pay the Principal Sum.

The Policy Definition section defines Injury as:

"Injury means, and an Insured Person is covered for, bodily injury resulting directly and independently of all other causes from accident which occurs:
   a) while he or she is covered under; and
   b) in the manner specified in;
a Hazard applicable to his or her class. Loss resulting from:
   a) sickness or disease, except a pus-forming infection which occurs through an accidental wound; or
   b) medical or surgical treatment of a sickness or disease.
is not considered as resulting from injury."

Group Benefits Claims
P.O. Box 14299
Lexington, KY 40512
1-888-563-1124

# EXHIBIT C

Hazards and Benefits determined by class. Each insured person is covered under the Hazard and for the Benefits applicable to the Class in which he or she qualifies: a) beginning on the date he or she enters the Class; and b) ending on the date he or she leaves the Class.

Hazard C-12, 24-Hour Coverage, Business Trip Coverage:
"This Hazard covers injury resulting from an accident which occurs anywhere in the world during a business trip including a) an injury resulting from an accident which occurs while the Insured Person is a passenger on, boarding or alighting from a Civil Aircraft or Military Transport Aircraft; or b) injury resulting from being struck by an aircraft."

We based our decision to deny your claim for benefits based upon Policy language and all the documents contained in our claim file, viewed as a whole, including the following specific information:

1. The Claimant's Statement of Accidental Death
2. The State of Tennessee Certificate of Death
3. The City of Memphis OJI Program Report
4. The Autopsy Report

The Claimant's Statement of Accidental Death indicates that Mr. Eddins' was doing a cleanup/overhaul at a fire scene when he suddenly collapsed on April 16, 2016.

The State of Tennessee Certificate of Death indicates that Mr. Eddins died on April 17, 2016 from Cardiac Arrhythmias and Hypertensive Cardiovascular Disease. The Manner of Death was listed as Natural and there was no injury noted on the Death Certificate.

The City of Memphis OJI Program report states that on April 16, 2016 Mr. Eddins was doing an overhaul and while bending over he became dizzy and fainted. EMS was called and he was transported to a local hospital and pronounced dead. The diagnosis was a possible heart attack.

The Autopsy Report from the Office of the Medical Examiner reports that Mr. Eddins was a 57 year old male Firefighter witnessed to collapse while on the scene of a house fire on April 17, 2016. Treatment was initiated by fellow firefighters then he was transported to Methodist South Hospital. Emergency department personnel treated him until all lifesaving efforts were exhausted and death was pronounced. It appeared to be a natural death. Jurisdiction for the death was accepted by the Medical Examiner's Office. The Pathological Diagnoses section of the Autopsy, performed on April 17, 2016, indicated:

" I. Hypertensive cardiovascular disease,
     A. Cardiomegaly (466 g),
     B. Nephrosclerosis,
     C. 20% atherosclerotic stenosis of left anterior descending coronary artery,
     D. 10-20% atherosclerotic stenosis of right coronary artery,
II. Slight steatosis of liver,
III. Mild emphysematous change of lungs,
CAUSE OF DEATH: cardiac arrhythmia due to hypertensive cardiovascular disease.

**EXHIBIT C**

In addition, it was reported that the airways contain no foreign materials or soot. The summary stated that the decedent reportedly sustained a witnessed collapse while on the job as a firefighter. Autopsy showed changes of the heart and kidneys due to hypertensive cardiovascular disease. Blood toxicology testing was negative for any lethal findings or intoxicants. Hypertensive cardiovascular disease caused death by cardiac arrhythmia. The manner of death is natural."

The information reviewed establishes that Mr. Eddins' death did not result from accidental injury independent of all other causes, which is a required condition for benefits to become payable under the Policy. As set forth above, the Policy defines Injury as bodily injury caused by an accident and the accident must result directly and independently of all other causes. Loss resulting from sickness or disease is not considered as resulting from injury. It has been established that Mr. Eddins' death was a result of cardiac arrhythmias and hypertensive cardiovascular disease. Because Mr. Eddins' death was due to sickness or disease, it is not considered as a result of an injury and his death does not constitute a covered loss under the terms of the Policy. Therefore, no Accidental Death benefits are payable.

In denying this claim, The Hartford reserves all rights and defenses available to us under the terms of the policy.

If you have any additional information, not previously submitted, which you believe will assist us in evaluating your claim for Accidental Death Benefits, please forward that to us for our consideration within sixty (60) days from the date of receipt of this letter. In particular, evidence that indicates that Mr. Eddins' loss was caused by bodily injury caused by an accident and that resulted, directly and independently of all other causes and not from sickness and disease, may assist us in further evaluating your claim for benefits. The Hartford will review and additional information you submit, along with the previously submitted information and notify you of the results of our review.

If you disagree with our denial decision, you have the right to appeal our decision and review relevant documents in your claim file. You are entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records and other information relevant to your claim. If you do not agree with the reason why your claim was denied, in whole or part, and you wish to appeal our decision, please write to us within sixty (60) days of the date of this letter. Your letter, which must be signed and dated by you or your legal representative, should clearly outline your position and any issues or comments you have in connection with your claim and our decision to deny your request for benefits under the Policy. Please include your printed or typed full name, Policyholder, and at least the last four digits of the insured's Social Security Number with your appeal letter (i.e.xxx-xx-1234). Once we receive your appeal, we will again review your claim, based upon your statements and the documents and notes contained in your claim file. Upon completion of this review we will advise you of our further determination.

Please send your appeal letter to:

Hartford Life Insurance Company
Claim Appeal Unit
P.O. Box 14087
Lexington, KY 40512

**EXHIBIT C**

If you have any questions, please call Customer Service at 1-888-563-1124. Our hours are Monday through Friday, between 8:00 AM to 8:00 PM EST.

Sincerely,

*Bayle Chatman*

Claim Analyst
Hartford Life and Accident Insurance Company

**EXHIBIT C**



# CT-001615-17 : CITY OF MEMPHIS VS HARTFORD LIFE AND ACCIDENT INS
## CIRCUIT COURT

| | |
|---|---|
| **Case Number** | CT-001615-17 |
| **Case Type** | BREACH OF CONTRACT |
| **Opened** | 04-11-2017 |
| **Status** | INITIATE |

| | |
|---|---|
| **Plaintiff** | CITY OF MEMPHIS et al |
| **Defendant** | HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY et al |
| **Judge** | HONORABLE ROBERT S WEISS - Division 30CX |
| **Amt. of Claim** | $350000.00 |
| **Jury/Non Jury** | Non Jury |

⊞ Show/Hide Participants

Click here to access documents for this case

| File Date | Case History |
|---|---|
| 04-12-2017<br>Court | PAYMENT RECEIVED - A Payment of $298.60 was made on receipt CTCT488499.<br>Filed by: Court |
| 04-11-2017<br>Court | CATEGORY 1 FILING<br>Filed by: Court |
| 04-11-2017<br>Court | COMPLAINT FILED<br>Filed by: Court |
| 04-11-2017<br>Plaintiff | E-FILED -----------COMPLAINT - Complaint for Breach of Insurance Contract<br>Filed by: SEAN ANTONE HUNT |
| 04-11-2017<br>Plaintiff | SUMMONS ISSD TO MISC - Summons Issued to HARTFORD LIFE AND ACCIDENT INS CO - atty to forward Commissioner of Insurance<br>Filed by: SEAN ANTONE HUNT |

35